WILLIAM MESCHI & another[1] *vs.* KAREN IVERSON.

No. 03-P-123.

Middlesex. January 21, 2004. - March 22, 2004.

Present: McHUGH, COHEN, & GREEN, JJ.

*Attorney at Law,* Admission pro hac vice.

In a civil action, the judge did not abuse her discretion in denying the plaintiffs' motion for an out-of-State attorney to be admitted pro hac vice, where the attorney's colleagues, as members of the Massachusetts bar, were available to represent the plaintiffs, and where the attorney came close to committing an ethical breach in engaging in conversation a person whom he knew to be represented by counsel in the matter at issue. [681-684]

CIVIL ACTION commenced in the Superior Court Department on August 24, 2001.

A motion for counsel to be admitted pro hac vice was heard by *Linda E. Giles,* J.

*James V. Tabner* (*Dudley C. Goar* with him) for the plaintiffs.

*Leigh-Ann M. Patterson* (*Maia H. Harris* with her) for the defendant.

GREEN, J. A judge of the Superior Court denied the plaintiffs' motion for their New York attorney to be admitted, pro hac vice, to represent them in this action, and the plaintiffs appealed that order. Our review of the record persuades us that the judge did not abuse her discretion in denying the motion. We accordingly affirm the order.

The parties' underlying dispute arises from the administration of a trust established by their mother, Loretta Meschi. The parties were named jointly as trustees of the trust until May 10, 2001, when Loretta executed an amendment to the trust and a

[1]Denise Meschi-Guntrum.

new durable power of attorney, removing the plaintiffs as trustees and as attorneys-in-fact, and retaining the defendant in both capacities.[2] The plaintiffs claim that the defendant exerted undue influence over Loretta in causing her to execute these documents. Loretta suffers from diffuse Lewy body disease, a form of Alzheimer's disease, and has resided at all times relevant to this appeal in an assisted living facility.

The plaintiffs enlisted the assistance of William F. Ryan, Jr., to pursue their claim.[3] Mr. Ryan is an attorney in Albany, New York, and is licensed to practice in that State but not in Massachusetts. One of Mr. Ryan's junior partners and an associate are members of the Massachusetts bar. On July 25, 2002, Mr. Ryan's associate moved, on Mr. Ryan's behalf, for his admission pro hac vice to represent the plaintiffs in the case.[4] (The associate had entered an appearance.)

Shortly prior to the motion for Mr. Ryan's admission, the parties and their counsel engaged in a quarrel over discovery. On May 7, 2002, the plaintiffs served on the defendant a subpoena for the deposition of Loretta, noticed for June 18, 2002. Separately, the plaintiffs noticed the deposition of attorney David Freedman (who had been Loretta's estate planning attorney and who was present when she executed the trust amendment) for June 17, 2002. On June 17, 2002, at the designated place and time, counsel and Mr. Freedman assembled for Mr. Freedman's deposition. Mr. Ryan and his colleagues traveled from Albany to Boston for the deposition; the plaintiffs traveled from Arizona and California, respectively. The deposition concluded at approximately 5:00 P.M. At the conclusion of the deposition, the defendant's counsel, Ms. Leigh-Ann Patterson, served on the plaintiffs' counsel, by hand, an "emergency

_____

[2]The new durable power of attorney also named Virginia K. Sembrich (Loretta's sister) as an attorney-in-fact, to serve jointly with the defendant. Sembrich was named as a defendant in a second amended complaint, allowed after this appeal entered on our docket, and is not implicated in the issues subject to this appeal.

[3]The plaintiff William Meschi had previously employed Mr. Ryan while living in New York and accordingly was familiar with his work. The record suggests that Mr. Ryan is experienced in estate planning matters.

[4]Mr. Ryan had previously submitted a motion under his own signature, but it was rejected on July 16, 2002, because he is not a member of the Massachusetts bar.

motion for protective order concerning subpoena served on non-party Loretta Meschi." Ms. Patterson had made no mention earlier during the day of her intention to file the motion.

The motion was grounded in the assertion that the stress and physical demands of a deposition would be detrimental to Loretta's health and well-being, and was supported by a letter to that effect from a physician, dated three days earlier. As indicated on the document, Ms. Patterson signed the motion as counsel for Loretta. Ms. Patterson proposed that counsel confer by telephone at 9:00 A.M. the following day for the purpose of determining whether and when a judge would be available to hear the motion.[5] The subpoena for Loretta's deposition specified that the deposition would begin at 9:30 A.M.

After considering the matter overnight, Mr. Ryan called Ms. Patterson at 7:00 A.M. and left her a voice mail message advising that, as the deposition had been noticed for 9:30 A.M. and there was then no court order preventing the deposition from proceeding as scheduled, it was his intention to proceed with the deposition rather than to postpone it pending a hearing on the emergency motion. On hearing that message at approximately 7:15 A.M., Ms. Patterson telephoned the defendant, instructing her to remove Loretta from her bedroom. Ms. Patterson also instructed the staff at the assisted living facility to intercept the stenographer at the entrance, and to inform him or her that the deposition had been canceled. When Mr. Ryan, his colleagues, and his clients arrived at the facility, their stenographer had been diverted and the defendant had, as instructed, removed Loretta to another, undisclosed area of the facility.

At approximately 9:15 A.M., a judge of the Superior Court issued an order allowing the defendant's motion for a protective order. Ms. Patterson telephoned the defendant at approximately 9:45 A.M. to inform her that the protective order had issued, and asked her to find Mr. Ryan so that she could advise him that the protective order had issued. The defendant returned, with Loretta, to Loretta's bedroom.

Arriving at the bedroom, the defendant and Loretta encoun-

---

[5]The record contains conflicting accounts of whether the parties agreed to do so.

tered the plaintiffs and Mr. Ryan. The defendant advised Mr. Ryan that Loretta's deposition had been stayed by court order, and Mr. Ryan received confirmation of that advice by telephone from Ms. Patterson. The defendant proceeded to settle her mother into her bedroom.

The plaintiffs entered the bedroom and engaged their mother in conversation. The plaintiff William Meschi emerged from the bedroom to invite Mr. Ryan to "meet" his mother. As Mr. Ryan entered the bedroom, the plaintiff Denise Meschi was discussing with Loretta her upcoming birthday. Mr. Ryan asked Loretta when her birthday was.[6] The defendant told Mr. Ryan that her mother was represented by counsel and that he should not speak with her without counsel present; Mr. Ryan responded that the defendant should not tell him how to do his job. The defendant telephoned Ms. Patterson to advise her of the situation, Ms. Patterson asked to speak with Mr. Ryan, and an animated telephone conversation ensued between the two. At the end of his conversation with Ms. Patterson, Mr. Ryan left the facility without engaging in further conversation with the defendant or Loretta.

With that prologue, the parties appeared on October 28, 2002, before the motion judge for hearing on the motion to admit Mr. Ryan pro hac vice. In her written order, the motion judge explained her determination to deny the motion principally by reference to "how perilously close [Mr.] Ryan chose to skate" to the line of the Massachusetts Rules of Professional Conduct in attempting to engage Loretta in conversation despite knowing that she was represented by counsel. See Mass.R.Prof.C. 4.2, as amended, 437 Mass. 1303 (2002).

On appeal from an order denying admission of an out-of-State attorney pro hac vice under G. L. c. 221, § 46A, we review for abuse of discretion.[7] See *DiLuzio* v. *United Elec., Radio & Mach. Workers of Am., Local 274*, 391 Mass. 211, 215

---

[6]As the motion judge observed, such an inquiry is among those commonly used to test the mental competency of a person whose competency is subject to question.

[7]The evidence before the motion judge consisted entirely of affidavits and other documentary material. We are, accordingly, free to assess the evidence anew. See *Guempel* v. *Great Am. Ins. Co.*, 11 Mass. App. Ct. 845, 848 (1981). *Boston* v. *Santosuosso*, 307 Mass. 302, 331 (1940), cited by the defendant to

(1984); *Merles* v. *Lerner*, 391 Mass. 221, 223-224 (1984). Viewed against that standard, there can be no serious question that the motion judge acted within her discretion in denying the plaintiffs' motion for admission of Mr. Ryan. Among other reasons to justify that discretionary determination, we observe that Mr. Ryan's colleagues, as members of the Massachusetts bar, were and are available to represent the plaintiffs in the present action and may, subject to the court's supervision and approval, enjoy the benefit of Mr. Ryan's consultation and advice in that exercise. See *DiLuzio, supra* at 215-216.[8] More importantly, we do not disagree with the assessment of the motion judge that Mr. Ryan skated perilously close to the line in his election to engage Loretta in conversation despite knowing that she was represented by counsel.[9]

We can understand the frustration that contributed to Mr. Ryan's decision to attempt to proceed with the deposition as scheduled, and to his ill-advised election to enter Loretta's room after learning that the deposition had been stayed. With clients who had traveled a considerable distance for the deposition of an important witness scheduled some six weeks previously, having traveled some distance himself, and having spent the entire previous day in a deposition with Ms. Patterson with

the contrary, involved interrogatory responses from a witness who also testified before the lower court judge and is, accordingly, inapposite. See *id.* at 332. The facts essential to our review of the lower court's order do not, however, turn in material respect on questions of credibility.

[8]We note from the Superior Court docket that the motion judge on January 21, 2003, allowed the defendant's emergency motion to prevent Mr. Ryan from assisting with depositions. Though that order is not before us in the present appeal, we observe that *DiLuzio* envisions the appropriateness of out-of-State counsel assisting local counsel, subject to such limits as may be imposed by the court; we do not read *DiLuzio* as warranting or requiring an absolute prohibition against out-of-State counsel furnishing any assistance to local counsel even if denied admission pro hac vice. See *Merles* v. *Lerner*, 391 Mass. at 224.

[9]Mr. Ryan contends that his conversation was benign and, in any event, did not violate the relevant ethical canon because he did not communicate about the subject matter of the case. See Mass.R.Prof.C. 4.2. Like the motion judge, however, without determining whether his conduct violated Rule 4.2, we agree that his decision to address Loretta in the circumstances described raises serious questions bearing adversely on whether to extend to him permission to act as Massachusetts counsel in the instant matter. See *Merles* v. *Lerner*, 391 Mass. at 224-225.

no mention of her intention to seek a protective order, Mr. Ryan was justifiably incensed by Ms. Patterson's choice of tactics in serving him with her motion for an emergency protective order at the conclusion of Mr. Freedman's deposition.[10]

Frustration with an adversary's tactics cannot, however, stand as justification for an inappropriate response.[11] Though Mr. Ryan was technically correct to observe that no court order had

---

[10] We note the defendant's comment, in her brief, that Ms. Patterson complied with Rule 9C of the Rules of the Superior Court (1989) in filing her motion. The record citation to support that assertion is to the following description in a letter from Ms. Patterson to Mr. Ryan, dated June 19, 2002, of a conversation between the two that took place at the time Ms. Patterson served Mr. Ryan with her emergency motion:

> "To comply with Rule 9C, I stated that I was serving you with the Motion and asked if your client[s] would agree to it. If they would not, I said I would file my Motion with the Court the next morning and secure a Protective Order. You told me your clients would not agree and you would oppose the motion."

Ms. Patterson's assumption that Rule 9C applied to her motion for a protective order is entirely understandable, given the close relationship between a motion to compel discovery, brought under Mass.R.Civ.P. 37, as amended, 423 Mass. 1406 (1996), and a motion for a protective order, brought under Mass.R.Civ.P. 26(c), as amended, 423 Mass. 1401 (1996). See Mass.R.Civ.P. 37(d), 365 Mass. 797 (1974). Indeed, the objective of Rule 9C, to encourage counsel to work out their differences in discovery disputes before bringing them to court, is pertinent regardless of how a discovery motion is styled. We note, however, that Rule 9C refers by its terms only to motions brought under Mass.R.Civ.P. 37; in pertinent part, Rule 9C provides as follows:

> "Counsel for each of the parties shall confer in advance of filing any motion under Mass.R.Civ.P. 37 in a good faith effort to narrow areas of disagreement to the fullest possible extent. Counsel for the party who intends to file the motion shall be responsible for initiating the conference."

Rule 9C of the Rules of the Superior Court (1989).

If Rule 9C did apply to the motion, a discussion such as described above in Ms. Patterson's letter, particularly in the circumstances, would comply with neither the letter nor the spirit of the rule.

[11] Sadly, incivility between attorney adversaries is an all too common occurrence, particularly in the discovery process. See BBA Calls Upon Judges, BBO To Curb Incivility, Mass. Law. Wkly., June 24, 2002, at 1; Boston Bar Association Task Force on Civility in the Legal Profession, Report (May 23, 2002). The problem is exacerbated, rather than addressed, however, when warring attorneys respond in kind to uncivil behavior. In cases in which the parties' emotions run high, such as a family dispute of the type involved here,

entered as of the time he left for the assisted living facility with the intention of proceeding with Loretta's deposition, he surely was aware of the likely prospect that such an order would issue promptly in his absence on a motion asserting, without contravening evidence, that the deposition would be detrimental to the deponent's health. Had Mr. Ryan instead attended the hearing on the emergency motion and opposed it, a range of options would have been available to him, including the development of a procedure to determine the terms and conditions under which he could obtain deposition testimony from Loretta with appropriate accommodation to her condition, and a request for reimbursement of the costs he and his clients incurred as a result of the defendant's late-filed motion to stay the deposition (including, potentially, their costs in making a second trip if and when Loretta's deposition might eventually occur). Mr. Ryan's decision to respond to Ms. Patterson's tactics as he did was inappropriate in its own right; his vulnerability as an out-of-State attorney in need of a favorable discretionary ruling to continue on his clients' behalf merely added to the risk he assumed in doing so.

> *Order denying motion for admission pro hac vice affirmed.*

---

it is especially important for the attorneys to maintain professionalism, so as not to inflame the parties' already volatile attitudes and to preserve the dignity of, and respect for, the judicial process.