SUPERIOR COURT 
 
 THE FIRST LIBERTY INSURANCE CORP. v. RAPID FLOW, INC.

 
 Docket:
 2384CV02142-C
 
 
 Dates:
 April 4, 2024
 
 
 Present:
 Robert B. Gordon
 
 
 County:
 SUFFOLK
 

 
 Keywords:
 MEMORANDUM OF DECISION AND ORDER ON PLAINTIFF,'S PARTIAL MOTION TO DISMISS COUNT II OF DEFENDANT'S COUNTERCLAIM
 
 

 Presented for decision is Plaintiff The First Liberty Insurance Corp.'s Partial Motion to Dismiss Count II of Defendant's counterclaim. For the reasons which follow, the Plaintiffs motion shall be ALLOWED.
BACKGROUND
            Plaintiff The First Liberty Insurance Corp. ("First Liberty") has brought a breach of contract action against Rapid Flow, Inc. ("Rapid Flow"). By this action, First Liberty seeks to recover unpaid premiums purportedly due the carrier W1dcr a policy of commercial vehicle insurance issued to Rapid Flow. Rapid Flow contests the claimed indebtedness, and has asserted a counterclaim in which it charges that First Liberty engaged in "bad faith" in the manner in which it commenced its contract action. [1]
 
--------------------------------------------
 
[1] The precise legal grounds for the pleaded counterclaim are less than clear, but this is of no moment. Whether treated as a claim for unfair and deceptive business practices under G.L. c. 93A (as First Liberty has construed it), as
 
                                                            -1-
 
The gravamen of Defendant’s counterclaim rests upon the fact that First Liberty previously attempted to commence its civil suit against Rapid Flow with an identical pleading (the "First Action") filed on January, 19, 2023. At that time, however, and for reasons not apparent in the Rule 12 record, Fir t Liberty failed to effect service of process on Rapid Flow within the 90-day period prescribed by Mass. R. Civ. P. 4(j). Several months after Rule 4(j)'s proof of service deadline passed, Jct having failed to seek an enlargement of time to make and demonstrate the required service, First Liberty purported to serve its Complaint in the First Action on Rapid Flow's president at his personal residence. Untimeliness aside, this was not effective service of process under Mass. R. Civ. P. 4(d)(2) (requiring service to be made upon a domestic corporation at its "princida1 place of business" within the Commonwealth). 
            On August 30, 2023, and in accordance with Superior Court Rule 9A, Rapid Flow notified First Liberty of its intent to file a Motion to Dismiss pursuant to Mass. R. Civ. P. 12(b)(5) (insufficiency of service o process) and to seek legal fees in connection with same. Although Rapid Flow asserts to the Court that it "initiated a Rule 9C conference prior to filing its Motion to Dismiss," it is altogether evident that no actual 9C conference in fact occurred.[2]
 
--------------------------------------------
 
a claim for common law abuse of process, or as a charge of bad faith filing entitling Rapid Flow to reasonable fees and costs under G.L. c. 231, § 6F, Defend t's allegations in Count II of its Counterclaim will simply  not give rise  to a viable cause of action against First Liberty.
[2] Had the aspirations of Superior Court Rule 9C been given any real consideration, Rapid Flaw's objections to the manner and timing of First Liberty's service of process could surely have been addressed and obviated without the need for motion filing. This is, of course, the very purpose of Rule 9C, viz.,to require lawyers to communicate with one another in a good faith attempt to eliminate or narrow areas of disagreement where possible, thereby reducing or even ending the need for judicial intervention. See Meschi v. Iverson, 60 Mass. App. Ct. 678,683 n.10 (2004) ("[T]he objective of Rule 9C [is] to encourage counsel to work out their differences ... before bringing them to court[.]"). Curable defects in service of process represent a textbook example of where a properly conducted Rule 9C conference will often spare the parties 1and the Court the burden of unnecessary, time-consuming and costly motion practice. In its unmistakable zeal to flog First Liberty for its service foot-faults, however, and seek legal foes for the cost of the flogging, Rapid Flow bypassed the expectations of Rule 9C. The irony that this Defendant now asserts a counterclaim for "bad faith" against First Liberty is not lost on the undersigned.
 
                                                            -2-
 
            Shortly prior to the date when First Liberty's opposition to Rapid Flow's Motion to Dismiss would have been due for service, First Liberty unilaterally filed a motion for voluntary dismissal of the First Action in accordance with Mass. R. Civ. P. 4l(a)(l). This dismissal effectively mooted Rapid Flow's Motion to Dismiss, and thereby deprived Rapid Flow of the ability to seek as sanction an award of the legal fees it incurred in the preparation of such motion. Following the ensuing dismissal o1thc First Action on August 31, 2023, First Liberty commenced the present suit (identical in substance) on September 25, 2023. Rapid Flow has since counterclaimed, charging First Liberty with "bad faith" in its litigation practices. More specifically, the counterclaim alleges that First Liberty's supposed "misuse" of the Rule 41(a)(l) dismissal procedure to evade sanction-seeking in the First Action represents an act of bad faith, and breathes life into Rapid Flow's frustrated pursuit of such sanctions.
DISCUSSION
            The Court will not dwell o er-long on Rapid Plow's counterclaim, the meritlessness of which is manifest. A few points, however, are worth making, both to expound the Court's reasons for decision and to share guidance as to how and why this case has fallen so far off the rails.
            First, although Rapid Flow' motion papers persistently accuse First Liberty of a bad faith violation of Rule 4(j) in its voluntary dismissal of the First Action, there was in fact no such violation of this rule. Rule 4(j) merely states that, absent a demonstration of good cause why proper service could not be effected, failure to serve the summons and complaint within 90 days "shall" result in a dismissal of the action upon motion or at the Court's own initiative. Dismissal pursuant to Rule 4(j) is not a sanction for a bad faith filing, but instead an administrative disposition of a case that simply cannot proceed because the party-defendant has no proper
 
                                                            -3-
 
notice of it. The entire premise of Rapid Plow's counterclaim, therefore, viz.,that First Liberty's failure to make timely service of the First Action under Rule 4 amounts to sanctionable bad faith, is misconceived.
            Second, where the presumptive time requirements for service under Rule 4 have not been satisfied by the plaintiff, a dismissal without prejudice is the prescribed remedy.  See Mass. R. Civ. P. 4G) (" ... shall be dismissed as to that defendant without prejudice" (emphasis added)). The awarding of legal fees to the party named in the action (but who, in the vast majority of cases, is not even aware of the suit because no service has been made) is plainly not contemplated. See Ventresca v. Town Manager of Billerica. 68 Mass. App. Ct. 62, 66 (2007) ("As a general rule in Massachusetts, a litigant must bear his own expenses including attorney's fees, except where a statute permits the award of costs, a valid contract ... provides for costs, or rules concerning damages permit[] recovery." (quotation omitted)). Indeed, an administrative disposition by the Court, acting on its own, is the most common course of action. See, e.g. Shuman v. The Stanley Works, 30 Mass. App. Ct. 951,952 (1991); Lyons v. Plan. Bd. of Andover, No. 05-P-1492, 2007 WL 38085, at *3 (Mass. App. Ct. Jan. 5, 2007); Mason v. Stadig. No. 2084CV02611, 2022 WL 18144962, at *1 (Mass. Super. Ct. July 13, 2022) (Squires-Lee, J.). In the First Action, Rapid flow pu1ucd a sanction that the undersigned has literally never seen awarded in these circumstances (that is, against a litigant that failed to make service of process within 90 days) during his 11 years on the Superior Court bench. Indeed, Rapid Flow has cited no precedent from any jurisdiction supporting its extraordinary request for sanctions - fees it senselessly incurred on account of its own inflexible, perfunctory approach to the Rule 9C process. Put another way, Defendant's counterclaim here seeks recompense for what was largely a self-inflicted wound.
 
                                                            -4-
 
            Third, to the extent that Rapid Plow's counterclaim protests First Liberty's decision to dismiss the First Action voluntarily rather than defend a forthcoming Motion to Dismiss, it fails on its face where such decision rested squarely with First Liberty pursuant to the Rules of Civil Procedure. Mass. R. Civ. P. 41 provides in pertinent part that "an action may be dismissed by the plaintiff without order of court ... by failing a notice of dismissal at any time before service by the adverse party of an answer or motion for summary judgment, whichever first occurs." Mass. R. Civ. P. 41(a)(l)(I). The unmistakable purpose of this rule is to permit a litigant to terminate a suit it has initiated without the need for notice to an adversary or court approval, so long as the voluntary dismissal occurs before the adverse party has invested substantial resources in the action (and thus might want to litigate its interests further, such as by pressing counterclaims of its own or seeking sanctions). Such dismissals are common, Morgan v. Evans, 39 Mass. App. Ct. 465,470 (1995) and this is precisely what took place here. First Liberty filed notice of a voluntary dismissal of the First Action before Rapid Flow had answered or moved for summary judgment - a filing entirely within its right under the express terms of Rule 41(a), and in no sense an act of "bad faith." Defendant's opposition submission does not refute this claim- defeating fact.
            Finally, the Court observes that what appears to be Rapid Flow's principal basis for ascribing bad faith to First Liberty voluntary dismissal of the First Action is the timing of its· filing. To wit, First Liberty waited until after it had received service of Rapid Flaw's Motion to Dismiss, and then, by dismissing the action unilaterally, rendered the motion moot (and thereby deprived Rapid Flow of the ability to press its request for sanctions).[3] Once again, Rapid Flow's
 
--------------------------------------------
[3] There can be little doubt that Rapid Flow's frustration in this case derives from its thwarted sanction-seeking rather than the mooting of its Motion to Dismiss. After all, whether the First Action was dismissed voluntarily under Rule 41, or involuntarily under Rule 12(b), the result would have been exactly the same: the First Action would have terminated other than on the merits, and without prejudice, leaving First Liberty free to re-file its suit against Rapid
 
                                                            -5-
 
charge of bad faith has things exactly wrong. The very reason Superior Court Rules 9A and 9C require service of a motion on (and discussion of its substance with) an adverse party prior to filing the motion is to afford such adverse party the opportunity to cure whatever legal defect is alleged. Responsive action by a non-moving party that obviates the need for judicial action on the motion is the clear and salutary purpose of these rules. See generally Gordon and Squires-Lee, "Continuing Confusion Concerning Massachusetts Superior Court Rules 9A and 9C," 65 Boston Bar Journal No. 3 (June, 2021). [4] What First Liberty did in this case may have frustrated Rapid Flow by circumventing its needlessly aggressive motion for dismissal and sanctions; but First Liberty surely did nothing wrong.
            It is the perception of the undersigned that, at nearly every turn, Rapid Flow has litigated this case in a manner that has produced unnecessary conflict and cost. It declined to address an adversary's problem with service o process cooperatively, choosing instead to exploit a lapse it
knew could be readily cured because Rule 4(j) dismissals are (by their express terms) "without prejudice." It then sought sanctions that do not appear to be contemplated as a remedy for untimely service of process, and had virtually no chance of being granted. It further filed its Rule
12 motion without honoring the expectations of Rule 9C by conferring with opposing counsel in a good faith effort to resolve or narrow areas of dispute concerning service. Finally, when First 
 
--------------------------------------------
 
Flow precisely as it has. But Rapid Flow has lost a venue in which to seek attorney's fees for First Liberty's initially delayed service of process, because that case has concluded; and this is plainly what prompts its present counterclaim.  .
[4] This in fact happens with great regularity in connection with motions to dismiss for failure to state a claim. The Rule 12(b)(6) motion prompts the plaintiff to amend its pleading in order to avoid the asserted ground for dismissal, and the motion to dismiss is thereupon withdrawn. See Mass. Super. Ct. Rule 9C(b)("When conferring about any motion under Mass. R. Civ. P. 12, counsel for each of the parties shall make a good faith effort to narrow areas of disagreement that may be resolved through amendment of the pleading, curative action in respect to defective  service, or other means related to the subject of the motion to dismiss."). A moving defendant in these circumstances may be deprived of an otherwise meritorious ground for dismissal or even awardable sanctions; but the net benefit to the system of justice is clear. This paradigm is not only not improper; it is altogether normative and desirable in Superior Court practice. Just read the rule.
 
                                                            -6-
 
Liberty withdrew the First Action, thereby eliminating the need for judicial intervention (by effectively ceding to Rapid Flow all it could legitimately hope to achieve via its now-mooted motion), Rapid Flow substituted fo'!that unnecessary motion an even more futile counterclaim (in the instant case). That act of petulance has prompted the need for the Court to address the instant Partial Motion to Dismiss.
            Lawyers often bemoan the inordinate delay and expense associated with civil litigation, and are wont to fault the courts as the cause of same. But as the apt Navajo saying goes, when you point a finger, there are three fingers pointing back at you. The parties' dispute in this case has been pending for well over a year, and the lawyers responsible for its advancement have done literally nothing conducive to resolving the matter or readying it for trial.[5] Even First Liberty's Partial Motion to Dismiss, addressed as it is to a single and inconsequential counterclaim, represents an unfortunate species of over-lawyering. A micro-squabble whose costs to litigate cannot be possibly be justified by the resolution thereof achieved.[6] The Court respectfully asks counsel for both s:ides to take a hard look at what has occurred in this case to date, and commit to doing better going forward.
 
--------------------------------------------
 
[5] The Court is in fact moved to question "whether the sad state of this case reflects ethical failure on the part of counsel. See In re Crossen, 450 Mass. 533, 563-64 (2008) ("An attorney's ethical duty to advance the interest of his client is limited by an equally solemn duty to comply with the law and standards of professional conduct ... [and] members of the bar [are] to conduct themselves in a manner compatible with the role of courts in the administration of justice." (internal quotations omitted)).Accord S.J.C. Rule 3:07, Preamble, para. 3 ("A lawyer's conduct should conform to the requirements of the law... [A lawyer should use the law ' s procedures only for legitimate purposes and not to harass or intimidate others.").
[6] In the context of Rule 56, the Superior  Court  Rules invite dismissal without hearing of motions for partial summary judgment that, like First Liberty’ s present Partial  Motion  to  Dismiss  Counterclaim,  "will save  little  or  no trial time, will not simplify the trial and will not promote resolution of the case." Mass. Super Ct. R. 9A(b)(5)(vi)(2). Would that this laudable rule applied to Rule 12(b) motions.
 
                                                            -7-
 
CONCLUSION AND ORDER
            For all the foregoing reasons, Plaintiffs Partial Motion to Dismiss Count II of Defendant's Counterclaim is ALLOWED.
SO ORDERED.